HAWKINS, Presiding Justice,
for the Court:
The heirs of Nettie Hammond Odom appeal from a decree of the chancery court dismissing their complaint in which they asserted an undivided one-fifth interest in Marion County realty, because Mrs. Odom as an heir-at-law of her father and mother was entitled to such interest. The basis of this claim was a warranty deed from Mrs. Odom’s brother-in-law and sister to Mrs. Odom’s mother dated September 28, 1947. The chancellor found that the grantee obtained no interest in the realty by this deed. The issue we address on this appeal is whether this 1947 deed was legally delivered. Persuaded the chancellor did not err in dismissing the complaint, we affirm.
FACTS
This case involves the title to twenty acres of land, the North Half of the Southeast Quarter of Southeast Quarter (N1^ SEVí SEA) of Section 16, Township 4 North, Range 3 East in Marion County. Interwoven in a series of land transactions with this tract is the South Half of the Southeast Quarter of the Southeast Quarter (SV2 SEV4 SEV4) of Section 16, and the two tracts, of course, comprise the Southeast forty acres of this Section. To keep these two tracts clear and distinct in the reader’s mind, the first will be referred to as the North 20 and the second as the South 20.
The central parties to this case are William G. Hammond and his wife Lonnie, their daughter Bertie Hammond Forbes and her husband W.N. Forbes, and another daughter Nettie Hammond Odom. Mr. and Mrs. Hammond also had three other children: Rossie, Ivy and Clyde. Thus our tale begins.
On February 26, 1904, Hammond through warranty deed acquired the South 20 acres and land east and adjacent thereto described as the South Half (SV2) of fractional Section 15, Township 4 North, Range 3 East.[1]
*999 On January 6, 1921, Hammond conveyed this South 20 to his wife Lonnie. On March 21, 1928, Hammond bought at a sheriffs tax sale the Northeast Quarter of the Southeast Quarter of the Southeast Quarter (NEVj SEVí SE1/»), which is the East Half (EV2) of the North 20. This 10 acre tract was apparently assessed to Lear Alford. Subsequent to this sale the chancery court of Marion County on April 10, 1928, confirmed title to this tract in Hammond as against Alford and her heirs.
On November 13, 1931, Hammond and his wife Lonnie for $500 cash consideration conveyed this 10 acre tract to Forbes. Also conveyed by this deed was the land in Section 15, and a small parcel of land in Section 21, Township 4 North, Range 3 East. This last parcel is described as beginning at the Northeast corner of the Northwest Quarter of the Southwest Quarter (NWV4 SW1/)), and run South 120 feet, then run West 264 feet, then run North 120 feet, then run East 260 feet to the point of beginning, and containing approximately three-fourths of an acre. The Hammonds and the Forbeses lived as next door neighbors in Section 21, about two or three hundred feet apart.
On November 14, 1936, the Hammonds conveyed the South 20 acres to Forbes.
On January 3, 1938, Forbes conveyed the East 10 acres of the North 20 to his wife (NEV4 SEVi SEV4), together with the land in Section 15 and in Section 21. This deed apparently covered the same property Forbes had acquired from the Hammonds in the 1931 deed.
On February 10, 1943, J.L. Cooper by warranty deed conveyed the West 10 acres of the North 20 to Forbes (NWV4 SEV4 SEV4), and also the Northeast Quarter of the Southeast Quarter of Section 16. Cooper also conveyed his unexpired 99-year leasehold interest in the Northwest Quarter of the Southeast Quarter, and the Northeast Quarter of the Southwest Quarter of the Southeast Quarter, Section 16. With this deed Forbes and his wife owned the North and the South 20 acres, together with the 40 acres to the North (NEV4 SEVi), and the leasehold interest in the Northwest Quarter of the Southeast Quarter, and the 10 acres just west of the North 20. Also they owned the adjacent property to the east in Section 15. In sum, the North 20 acres, then owned by Forbes, was surrounded by Forbes land.
On June 9, 1945, Forbes and his wife executed a royalty deed to W. Duncan to the Northeast Quarter of the Southeast Quarter, and the Southeast Quarter of the Southeast Quarter in Section 16.
On October 22, 1947, Forbes and his wife conveyed the South 20 (SV2 SEVi SEV4) to Lonnie. In this deed they also conveyed the three-fourths acre parcel in Section 21. On October 29, 1950, Hammond and his wife Lonnie by warranty deed conveyed the South 20 acres to Mrs. Bertie Forbes.
On February 21, 1952, A.M. Thornhill conveyed the West Half of the Southwest Quarter of the Southeast Quarter of Section 16 to Forbes. With this conveyance the Forbeses either owned, or held a leasehold interest in the entire Southeast Quarter of Section 16, except the 10 acres being the SE1/» of the SWVi of the SEV4.[2]
On April 19, 1954, Hammond and his wife Lonnie conveyed the three-fourths acre parcel in Section 21 to Bertie, reserving however for themselves a life estate in the realty. This deed was filed for record on the same date.
Filed contemporaneously with the last deed was a warranty deed dated September 23, 1947, from Forbes and his wife to Lonnie to the South Half of the Southeast Quarter (SV2 SEV4) of Section 16 embracing *1000 both the North 20 and the South 20 acre tracts, as well as 40 acres immediately West, and also to approximately three acres in Section 21, described as commencing at the Northeast corner of the Northwest Quarter of the Southwest Quarter, and run South 466.64 feet, then run West 264 feet, then run North 466.64 feet, then run East 264 feet to the point of beginning.
As above noted the Forbeses and Ham-monds were next door neighbors, and Bertie was the only one of the Hammond children who continued to reside in Marion County. Lonnie and Hammond died intestate in 1959 and 1964, respectively.
In applying for a Federal Land Bank Loan in 1968, Forbes and his wife learned from their title attorney that a cloud was cast by the September, 1947, deed. A quit claim deed to Bertie of the entire South Half of the Southeast Quarter of Section 16 was prepared and presented to all the children to sign. Three of them signed. Mrs. Nettie Hammond Odom, however, refused to sign the deed.
Nettie made no claim of interest in the realty following her refusal to sign the quit claim deed until November 30, 1981, when she filed a bill of complaint in the chancery court of Marion County to confirm title in herself to an undivided one-fifth (Vs) interest in the entire Southeast Quarter of the Southeast Quarter of Section 16 as an heir-at-law of Hammond and his wife Lonnie. Her entire claim is predicated on the September, 1947, deed.
Also joined as defendants were several oil and gas lessees, and as to these defendants Nettie sought to remove the leases as clouds upon her title.
Following a trial the chancery judge held there was no effective delivery of the September, 1947, deed, and found for the defendants. During pendency of the proceedings, Nettie died, and her cause was revived by her children Floyd Odom, Aubrey Ray Odom Hodges and Amelda Odom Matheson.
Nettie’s heirs (the Odoms) have appealed.
LAW
Nettie sought to confirm an interest in the entire forty acres, yet Hammond and Lonnie had conveyed the South 20 to Bertie in the October, 1950, deed and therefore Nettie’s claim to the South 20 was tenuous for this reason alone. Indeed, Count I, the main thrust of the complaint, was to confirm an interest in only the North 20 acres. In any event, Nettie’s claim for any interest is based solely on the September; 1947, deed.
The September, 1947, deed to the South Half of the Southeast Quarter (SV2 SE1/;) of Section 16 is an anomaly. It embraces 30 acres the Forbeses did not then own: The West Half of the Southwest Quarter of the Southeast Quarter (WV2 SWVí SEA), and the Southeast Quarter of the Southwest Quarter of the Southeast Quarter (SEV4 SWVi SE1/)) (this last 10 acres was never owned by the Forbes). It also conveyed the Forbeses homestead in Section 21.
One month later, on October 22, 1947, the Forbeses did convey the South 20 acres to Lonnie Hammond together with the ¾ -acre tract in Section 21, the last becoming the homestead of the Hammonds (which they reconveyed to Bertie in 1954, reserving for themselves a life estate).
Why would the Forbeses intentionally sell, and Lonnie Hammond, who it would appear was knowledgeable of the Forbeses property, willingly accept a deed to property she knew her daughter and son-in-law did not own? Why would the Forbeses include their home in the deed and Lonnie accept that as well?
If the Forbeses had intended to execute a deed to the property described in the September, 1947, deed, what was the necessity of the October 22, 1947, deed? Why was there a six and one-half year delay in recording the September, 1947, deed?
In sum, the September, 1947, deed makes little sense.
Unquestionably the Forbeses could have validly conveyed the entire Southeast Quarter of the Southeast Quarter (SEV4 SEV4) of Section 16, and under the doctrine of after *1001 acquired title, Lonnie Hammond by virtue of the 1952 Thornhill deed, likewise have acquired the West Half of the Southwest Quarter of the Southeast Quarter (WV2 SWVi SEVi). Buchanan v. Stinson, 335 So.2d 912 (Miss.1976); Crooker v. Hollingsworth, 210 Miss. 636, 46 So.2d 541 (1950). But was there any intent to convey the property?
Was this deed a mistake? Was it ever delivered in the legal sense of this word?
We held in Greer v. Higgins, 338 So.2d 1233 (Miss.1976), that a deed executed through mutual mistake of the parties could be set aside.
We have held that delivery by the grant- or and acceptance by the grantee are essential to the validity of a deed. Salmon v. Thompson, 391 So.2d 984 (Miss.1980).
We have also held that the delivery of a deed is largely a matter of intention of the grantor, manifested by his words, acts and the circumstances surrounding the transaction. McMillan v. Gibson, 222 Miss. 408, 76 So.2d 239 (1954). Obviously, an acceptance would be manifested in the same way.
This record is silent as to any spoken word by either Forbes or Bertie concerning delivery, or any spoken word by Hammond or Lonnie as to acceptance. Likewise, the record is silent as to any circumstances surrounding the execution of this deed by the Forbeses. The original deed was never produced. The record is silent as to what became of it.
There is a presumption of delivery of a deed found in the possession of the grantee. Newsom v. Newsom, 226 Miss. 303, 83 So.2d 802 (1955). No such presumption arises in this case because the deed was never produced.
Likewise, there is a presumption of delivery from a deed properly acknowledged before an authorized officer. Newsom v. Newsom, supra, and a deed that has been recorded. McMillan v. Gibson, supra. This September, 1947, deed carries with it both these presumptions. Beyond this, there is no proof in this record as to either a delivery or acceptance.
These presumptions are rebuttable. McMillan v. Gibson, supra; Newsom v. Newsom, supra; Reeves v. Reeves, 374 So.2d 791 (Miss.1979).
While this record is silent as to the words of the parties or circumstances surrounding the execution of the deed, there is an abundance of evidence as to the acts of the parties totally at odds with any actual delivery of the deed, or acceptance by the grantee Lonnie.
In addition to what we have already noted, the ad valorem tax records show that neither Hammond nor Lonnie was ever assessed with this North 20 acres either before or after 1954, and after 1950 neither of them was assessed with the South 20 acres. On the other hand the tax records support a continuous claim of ownership by Forbes and Bertie in the land for many years prior to the death of Hammond and Lonnie.
The chancellor undoubtedly considered all this when he found there was no legal delivery of this deed. We cannot say that he was manifestly wrong.
Cases involving the delivery of deeds, and mistake, involve a myriad of different factual situations, as diverse as the mind of man, and we are constrained to conclude this opinion with the cliche that each case must be evaluated on its peculiar facts.
Under the facts of this case we affirm.
AFFIRMED.
ROY NOBLE LEE, P.J., and DAN M. LEE, PRATHER, ROBERTSON, ANDERSON and GRIFFIN, JJ„ concur.
WALKER, C.J., and SULLIVAN, J., not participating.

. The recorded deed actually states the "South Half of the Southeast Quarter" of Section 16 which would comprise 80 acres. This is apparently erroneous, however, because there is no evidence of Hammond subsequently claiming any of the Southwest Quarter of the Southeast *999 Quarter, or the North 20 acre tract following this 1904 conveyance. Also, the bill of complaint filed in this cause, in deraigning title, describes the property in the 1904 deed as the "South ½ of SE'/t of SE'A”
The north and the east boundaries of fractional Section 15 are a river and it appears to contain approximately 100 acres.

. That is, except for the cloud cast by the September 23, 1947 deed, which will be discussed, infra.