607 So.2d 97 (1992)
W.H. GREENLEE, Jr., Rosa L. Greenlee, and Weyerhaeuser Company
v.
Jewell Greenlee MITCHELL, Christine Miller Edwards and Wendell H. Miller.
No. 89-CA-0464.
Supreme Court of Mississippi.
August 12, 1992.
*99 George M. Mitchell, Jr., Fortner & Mitchell, Eupora, Robert Thomas, Alford Thomas & Kilgore, Philadelphia, for appellants.
Buchanan Meek, Jr., Meek & Meek, Eupora, for appellees.
Before ROY NOBLE LEE, C.J., and ROBERTSON and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
Two deeds, one dated in 1949 and the other in 1953, form the basis of this suit. The 1949 deed was from W.H. Greenlee, Sr. to his sons, W.H. Greenlee, Jr. and Frank Greenlee. The 1953 deed covered the same property and was from Jewel Greenlee Mitchell, Cora Greenlee Miller, and Laura Greenlee (W.H. Greenlee, Sr.'s daughters and widow) to W.H. Greenlee, Jr. and Frank Greenlee (W.H. Greenlee, Sr.'s sons). This deed recited a conveyance of the 1/5 interest of each grantor, but was signed by only Jewell Greenlee Mitchell and Laura Greenlee.
W.H. Greenlee, Jr. and his wife Rosa (hereinafter "the Greenlees") claim that the 1949 deed is valid and through it W.H., Jr. received one-half (1/2) of the subject property. The Greenlees assert that the 1949 deed was witnessed by Jewell Greenlee Mitchell, one of the Appellees, and Mrs. A.W. (Cora) Miller, the mother of the remaining *100 two Appellees. W.H., Jr. claims that he owns the entire subject property as he bought the one-half interest that had belonged to his brother Frank, now deceased. According to W.H., Jr., the 1953 deed was given in order to clear up any potential problems with the 1949 deed.
Jewell Greenlee Mitchell and Christine and Wendell Miller (the children of Cora) claim W.H. Greenlee, Sr. lacked the mental capacity necessary to execute the 1949 deed. Further, they allege that the 1949 deed is invalid because it was not notarized. From the time of the 1949 deed until 1985, the Appellees (hereinafter "Mitchell/Millers") claim that the property was treated as though jointly owned by all of the heirs of W.H. Greenlee, Sr. and that Jewell Greenlee Mitchell paid the property taxes. W.H. Greenlee, Sr.'s widow, Laura, exercised ownership over the property during her lifetime; after her death, to the extent anyone did, it was the Mitchell/Millers. In 1985, the Mitchell/Millers claim W.H., Jr. recorded the 1953 deed and bought his deceased brother Frank's interest and conveyed it to his wife, Rosa, who subsequently sold the timber to Weyerhaeuser and then conveyed the property back to W.H., Jr.
Weyerhaeuser claims to be caught in the midst of a family feud it knows nothing about. It entered into negotiations to buy the timber in 1984 and was high bidder. In 1985 it requested a title check. The resulting title opinion showed the owner of the property to be Mrs. Rosa L. Greenlee. Rosa executed a warranty deed for the timber to Weyerhaeuser, who then harvested the timber.
It is stipulated that W.H. Greenlee, Sr. was the owner in fee simple of the subject land prior to the execution of the 1949 deed. It was further stipulated that Weyerhaeuser purchased the timber from Rosa Greenlee by competent bid in which Weyerhaeuser was high bidder and that Weyerhaeuser obtained a title opinion on the land in question from a local attorney; Weyerhaeuser obtained a warranty deed from Rosa Greenlee and paid her the bid price for the timber; and Weyerhaeuser was required to hire an attorney as a result of this action at the rate of $60.00 an hour.
W.H. Greenlee, Sr. died on December 10, 1949. His widow, Laura Greenlee, died in January, 1974. This left three heirs of W.H. Greenlee, Sr. Frank Greenlee, a son, had died in 1967. Cora Greenlee Miller, a daughter of W.H. Sr., died in October, 1974.
W.H., Sr. and his wife, Laura, lived on and worked the property until 1949, when they moved in with Cora and her family. W.H., Sr. was suffering from heart difficulties and lung cancer and was taking morphine for his pain. Jewell Greenlee Mitchell testified that W.H., Sr. told her that W.H., Jr. had been trying to get the property. According to Jewell, W.H., Sr. said that he would never deed it to him.
Malcolm Edwards, Christine Miller Edwards' husband, testified that W.H., Sr.'s health was poor from September, 1949, until his death. Edwards testified that W.H., Sr. was bedridden, did not know him, had no conversations with him, was in great pain constantly and was spitting up blood. Edwards also testified that W.H., Sr., was taking morphine shots and that he did not see him in a mentally competent condition from September, 1949, until he died.
Billy Miller testified that in September, 1949, when W.H., Sr. was living with his family, he was so sick he did not know when Billy, his own grandson, came in and out of his room; he cried and coughed a lot and did not carry on any conversations. Billy did not see him in a condition to carry on legal activities from September, 1949, until his death. Billy also testified that W.H., Sr. was on morphine constantly. Christine Miller Edwards' testimony regarding the state of mind and physical health of W.H., Sr. in the months of 1949 prior to his death was substantially the same. W.H., Jr. stated, however, that his father was responsive to conversations as late as October 17, 1949.
After W.H., Sr. died, Laura Greenlee paid taxes on the property. Billy Miller testified that in 1950, W.H., Jr. said the family place would ultimately be divided four ways, but as long as Laura Greenlee *101 lived, it would be her place. When Laura died in 1974, the property was assessed to the Laura Greenlee Estate from 1975 until 1984. Throughout this time Jewell Greenlee Mitchell paid the taxes on the property.
In April, 1970, Laura Greenlee executed an oil, gas and mineral lease on the subject land. W.H., Jr. claimed that the only reason she signed as grantor on the lease was because he and Frank had told her she could have control of the property during her lifetime. Christine Miller Edwards testified that the family all agreed in 1953 that the property would be used by Laura Greenlee until she died.
W.H., Jr. testified that he prepared the 1949 deed which gave the property to him and his brother, Frank, at his father's instruction. W.H., Jr. said that all of the Greenlee children were present when W.H., Sr. and his wife, Laura, signed the deed. W.H., Jr. denied that his father was taking morphine at that time. All of the Greenlee children, with the exception of W.H., Jr., signed as witnesses. W.H., Jr. testified that it was not notarized because there was no notary available and they thought it was valid with three witnesses. He did not consult an attorney regarding the deed and the deed was not filed of record until December 8, 1949, two days before W.H., Sr. died.
Jewell Greenlee Mitchell's explanation for the 1949 deed was that when W.H., Jr. started waving a piece of paper around and telling everybody that "daddy" wanted the children to sign it, Frank told her to go on and sign it to get W.H., Jr. to shut his mouth. She did. She further stated that Frank told her it would not be any good as it was not witnessed or "notified." Jewell says that what everyone signed was a piece of yellow legal paper and not the deed entered into evidence as the 1949 deed. Several other witnesses referred to the yellow piece of paper or legal pad and claimed that it was not the same as the deed in Exhibit 1.
Jewell also testified that Cora was upset by W.H., Jr.'s request that she sign the deed and said she would never sign it. Cora's son, Billy, also testified that his mother said she would never sign "any of it." Jewell denied that the signature of Mrs. A.R. Mitchell on the deed was executed by her and stated affirmatively that she had never seen the 1949 deed. She testified also that the signature on the 1949 deed purporting to be that of her sister Cora was not Cora's signature.
As to the 1953 deed, Jewell testified that she had not seen it until sometime in the year prior to the trial of this matter. Jewell said she did not sign the 1953 deed and has never spelled her name with one "1", as it is spelled on the deed. W.H., Jr.'s wife, Rosa, however, had been known to spell Jewell's name with one "l."
Jewell's son, David, also testified that the signature on the 1953 deed was not that of his mother. We note, however, that the birth certificate of Billy Mitchell, Jewell's son, spells Jewell with only one "l." The information on the document was supplied by Mrs. A.R. Mitchell (Jewell). W.D. Shumake, who was the notary on the 1953 deed, was not known to Jewell. She testified that she had never been paid back for any amount of the taxes she paid on the property from 1974 to 1984.
Shortly after Cora's death in October of 1974, Cora's children, Christine and Billy Miller, approached W.H., Jr. about dividing the home place. Nothing was done about it and W.H., Jr. testified that he did not feel that he needed to point out that he and Frank owned the land since it was a matter of record. Christine testified that she and her brother Billy had talked to W.H., Jr. about dividing the land because they wanted to build a weekend hideaway and that W.H., Jr. was concerned about some outsider buying into their land. Christine said they offered to give him the right of first refusal in writing, which he liked, but he still put them off because he did not have time right then.
In 1977, Max Greenlee, son of the deceased Frank, wrote a letter to his Aunt Jewell and sent copies to W.H., Jr. as well as to Billy and Christine Miller. Max had had the title checked by an attorney and understood that the property was in the name of W.H. Greenlee, Sr.'s Estate. The *102 purpose of the letter was to set a meeting of all the heirs to determine what should be done with the property. At this time Max was aware of the 1949 deed, but not of the 1953 deed.
W.H., Jr. testified that the 1949 deed stayed with him, then went to Frank just before Frank died. At Frank's death his son, Max, mailed the deed back to W.H., Jr., when W.H., Jr. bought out Frank's interest. However, Max had no knowledge of his father ever having had possession of the deed. W.H., Jr. paid Frank's heirs twelve thousand dollars ($12,000.00) for their interest in the land. This transaction was in 1984, after W.H., Jr. had already received a bid of forty-two thousand, seven hundred fifty-seven dollars ($42,757.00) for the timber alone. W.H., Jr. did not tell Frank's heirs about the timber offer. W.H., Jr. received a quitclaim deed from Frank's wife and children dated June, 1985. This deed was prepared by an attorney at Max Greenlee's request. W.H., Jr. witnessed all of their signatures.
W.H., Jr. did not know who drew up the 1953 deed. He stated that his mother, Laura Greenlee, wanted to give him and Frank this deed to back up the 1949 deed as "some of them" had raised questions regarding its lack of notarization. Cora Greenlee did not sign this deed because she had already signed one as a witness. W.H., Jr. claims Jewell gave the deed to him, but he did not see her sign it. He did witness his mother's signature and took her, at her request, to have her signature notarized.
Malcolm Edwards testified that the signature of Mrs. W.A. Miller, his mother-in-law, was not authentic. Laura Greenlee kept the document, later giving it to Jewell, who then gave it to W.H., Jr., who kept the deed in a safety deposit box until he had it recorded in August of 1985, just before selling the timber to Weyerhaeuser. W.H., Jr. testified that he recorded it on the advice of Judge Dwight Ball of Oxford, Mississippi, who told him it would back up the 1949 deed. W.H., Jr. also stated that Frank had a copy of the deed.
W.H., Jr. denied typing a letter to his two sisters which stated that he would sell any claim that he might have to the "old home place" for one dollar ($1.00) and then return the dollar. The letter explained that he did not want his sisters thinking that he was trying to get something that did not belong to him. The letter was dated and postmarked February 19, 1974, which was shortly after Laura Greenlee's death. Christine Miller Edwards testified that W.H., Jr. always typed his letters to family members.
In June of 1984, W.H., Jr., with the Weyerhaeuser bid in hand, attended a family reunion to feel out his relatives on the subject of the property as he had heard some were thinking about suing him. This was before W.H., Jr. bought out Frank's heirs' interest and W.H., Jr. suggested to Billy Miller that he (Billy) purchase it. Max Greenlee, one of Frank's sons, did not remember any business taking place at this family reunion but does remember some mention of taxes and a survey. Malcolm Edwards testified that there was some discussion of the property at this reunion, in general terms, that indicated it belonged to everybody and he specifically remembers W.H., Jr. saying that if they planned to divide the land Jewell needed to be paid back for the taxes and that the property should be surveyed. He also claimed that the property was discussed "like everybody's place" at other family reunions.
Billy Miller remembers W.H., Jr. saying Jewell needed to be reimbursed for the years of taxes she had paid and a survey would be necessary before the place could be divided. Christine stated that the property was discussed numerous times and always as "our place." Christine also recalled the discussion about paying back Jewell for the taxes and having a survey done so the land could be divided. Jewell's son, David, testified that he was privy to numerous discussions from as early as 1964 about dividing the place and maybe selling the timber. In June of 1985, W.H., Jr. called Max and told him he wanted to buy out Frank's share of the property. An agreement was reached between Max and *103 W.H., Jr. and that deal was subsequently completed.
Some six weeks before the timber was sold, W.H., Jr. gave a quitclaim deed to his wife, Rosa, conveying the land to her. This deed was drawn by Judge Dwight Ball of Oxford. According to W.H., Jr., Judge Ball and he did not discuss what type of deed should be drawn; W.H., Jr. just showed him the 1949 and 1953 deeds and let the judge draw his own conclusions.
Rosa, via W.H., Jr., her guardian ad litem, sold the timber for forty-two thousand seven hundred fifty-two dollars ($42,752.00), which has almost all been spent by she and W.H., Jr.. In December of 1987, Rosa quitclaimed the property back to W.H., Jr.
Jewell Mitchell knew nothing about the timber negotiations or harvest until after the fact. She admitted that she had never filed anything at the court house which might alert Weyerhaeuser that she owned or claimed part of the land. She still believed that Weyerhaeuser should have contacted her.
Max Greenlee testified that he had no knowledge of either Billy or Christine Miller exercising any control over the property. Billy testified that he had no knowledge of W.H., Jr.'s exercising ownership or control over the land until he sold the timber. Christine stated that she and her mother stored some furniture at the old homeplace and "went down there" to "look at everything."
Robert Foley, a handwriting expert, testified that the signature of Mrs. Jewell Evelyn Greenlee Mitchell on Exhibit 2, the 1953 warranty deed, was authentic, as was the signature of Mrs. A.R. (Jewell) Mitchell on Exhibit 1, the 1949 deed.
Emmett May, tax assessor and collector for Webster County, testified and offered an affidavit which was admitted into evidence. The affidavit clearly shows that taxes on the subject property were assessed as follows: 1950  W.H. Greenlee Estate; 1951-1969  Laura Greenlee; 1970  William Greenlee and Frank Greenlee Estate, with Laura Greenlee written in; 1971-1976  Laura Greenlee; 1977-1983  Laura Greenlee, c/o Jewell Mitchell; 1984-1985  William Greenlee c/o Jewell Mitchell; and 1986  Rosa Greenlee c/o Jewell Mitchell.
W.H., Jr. testified that his father trusted all of his children.
The chancellor, following a trial on the merits, entered his opinion which included the following:
1. The deed dated October 17, 1949, had no acknowledgement attached and therefore, should not have been recorded. An unacknowledged deed is not constructive notice to anyone.
2. Defendants Greenlees did not take possession of the land or offer any evidence of ownership until execution and delivery of the timber deed on September 25, 1985. W.H., Sr., his widow, and other heirs remained in actual or constructive possession of the land after the 1949 deed was executed.
3. W.H. Greenlee, Jr. was guilty of fraud and the statute of limitations did not begin to run until the timber was harvested in 1985 and 1986.
4. There existed a confidential relationship between W.H. Greenlee, Jr. and W.H. Greenlee, Sr. at the time of execution of the 1949 deed, which gives rise to a presumption of undue influence which was not rebutted by W.H. Greenlee, Jr.
5. Even without the confidential relationship there was undue influence of W.H. Greenlee, Sr. by W.H. Greenlee, Jr.. The 1949 deed is not valid.
6. The Defendants Greenlees are estopped from claiming under the 1953 deed pursuant to the doctrine of laches.
7. The purported signature of Jewell Evelyn Greenlee Mitchell on the 1953 deed is a forgery.
By his decree, the chancellor found that the defendant W.H. Greenlee, Jr. obtained an undivided one-fourth interest in the subject property by deed from the heirs of Frank Greenlee. W.H. Greenlee, Jr. also inherited one-fourth interest from his father and mother. Plaintiff Christine Edwards owns an undivided one-eighth interest *104 and Plaintiff Wendell Miller owns an undivided one-eighth interest in the subject property. Plaintiff Jewell Greenlee Mitchell owns an undivided one-fourth interest in the property.
The chancellor held that the timber deed from Mrs. Greenlee to Weyerhaeuser conveyed an undivided one-half interest and Weyerhaeuser acted in good faith and is not liable for statutory damages.
The chancellor found that the plaintiffs were entitled to a joint judgment against the defendants for one-half the timber purchase price. The chancellor found that Weyerhaeuser was entitled to a judgment against the Defendants Greenlees for one-half the purchase price of the timber.
The court filed this decree on March 7, 1989, and Weyerhaeuser filed a motion for entry of judgment for the defendant or in the alternative for a new trial, both of which were overruled by the trial judge. The Defendants Greenlees filed a motion for JNOV or in the alternative a motion for new trial, which was also overruled.
The Defendants Greenlees and Weyerhaeuser Company appeal to this Court, and raise the following issues:
1. Whether the trial court erred in its finding that the statute of limitations had not run against the Plaintiffs in regard to bringing this suit;
a. Whether the court erred in its interpretation of Mississippi Code Annotated (1972), sections 15-1-7, 15-1-9, and 15-1-11;
b. Whether the court erred in failing to apply the doctrine of laches;
2. Whether the court erred in finding that Defendant W.H. Greenlee, Jr. was guilty of fraud in the procurement of the 1949 deed;
a. Whether the court erred in finding that W.H. Greenlee, Jr. and his father had, at the time of the execution of the 1949 deed, a confidential relationship;
b. Whether the court erred in finding that W.H. Greenlee, Jr. exerted undue influence on his father in the execution of the 1949 deed;
3. Whether the court committed reversible error when it held that the 1949 warranty deed was not valid;
4. Whether the court erred in finding that Jewell Greenlee Mitchell did not sign and deliver the 1953 deed;
a. Whether error was committed by the court in accepting the version of Jewell Greenlee Mitchell as to the signature on the 1953 deed not being her signature;
b. Whether the court erred in not accepting the evidence presented by the handwriting expert;
5. Whether, in considering all deeds presented, the trial court committed error in its findings as to actual ownership of the subject property;
a. Whether error was committed by the court's finding that W.H. Greenlee, Jr. and/or Rosa L. Greenlee owned only one-half interest in the subject property with one-fourth interest being in Jewell Greenlee Mitchell, one-eighth interest in Christine Miller Edwards and one-eighth interest in Wendell H. Miller;
6. Whether the court erred when it found that the Defendants W.H. Greenlee, Jr. and Rosa L. Greenlee were not entitled to any recovery against the Plaintiffs as requested and sought in a cross-claim;
7. Whether the court erred in its interpretation of the 1949 deed and the 1953 deed as to any ownership conveyed by Laura Elizabeth Greenlee;
8. Whether the Defendants, Rosa L. Greenlee and W.H. Greenlee, Jr., have the protection of law as to the 1949 deed pursuant to Mississippi Code Annotated (1972), section 89-5-13, as said deed had been of record for twenty years;
9. Whether the court erred in allowing certain testimony and evidence to be admitted into the trial of this matter over objection; and
10. Whether the trial court erred in failing to grant unto Weyerhaeuser Company judgment against W.H. Greenlee, Jr. and Rosa L. Greenlee for attorney fees, court costs and other costs of prosecuting the defense of this action which *105 came about after Weyerhaeuser had acquired the timber from Appellants Greenlee by warranty timber deed.
Jewell Greenlee Mitchell, Christine Miller Edwards, and Wendell H. Miller cross-appeal, adding the following issues for this Court's determination:
11. Whether the Chancellor applied the wrong measure of damages for timber harvested from the commonly owned property; and
12. Whether the statutory penalty should apply not only to the amount of the judgment but also to the value of the interest in the property recovered through this action.

I.

WAS THE CHANCELLOR IN ERROR WHEN HE FOUND THAT W.H. GREENLEE, JR. WAS GUILTY OF FRAUD IN THE PROCUREMENT OF THE 1949 DEED?
The decree of the chancellor found W.H., Jr. guilty of fraud in the procurement of the 1949 deed, but did not specifically state of what the fraud consisted. When there are no specific findings of fact, we will assume that the trial court made determinations of fact sufficient to support its judgment. Pace v. Owens, 511 So.2d 489, 492 (Miss. 1987). We will also look to the evidence and see whether or not the state of facts justify the decree. Pace, 511 So.2d at 492.

A.

DID THE CHANCELLOR ERR IN FINDING THAT W.H. GREENLEE, JR. HAD, AT THE TIME OF THE EXECUTION OF THE 1949 DEED, A CONFIDENTIAL RELATIONSHIP WITH HIS FATHER?
Answered simply, yes. There is no evidence to support the chancellor's finding that there was a confidential relationship between W.H., Sr. and W.H., Jr. at the time of the execution of the 1949 deed. The chancellor was manifestly wrong.

B.

WAS THE CHANCELLOR WRONG IN FINDING THAT W.H. GREENLEE, JR., EXERTED UNDUE INFLUENCE ON HIS FATHER IN THE EXECUTION OF THE 1949 DEED?
When dealing with an inter vivos gift, we have held that a confidential relationship alone is sufficient to raise the presumption of undue influence. Miner v. Bertasi, 530 So.2d 168, 171, citing Estate of McRae, 522 So.2d 731, 737 (Miss. 1988), In re Will of Moses, 227 So.2d 829, 835 (Miss. 1969), Croft v. Alder, 237 Miss. 713, 115 So.2d 683, 686 (1959). However, the chancellor erred in finding a confidential relationship between W.H., Sr. and W.H., Jr. Without the existence of a confidential relationship, undue influence must be proved from the evidence without the benefit of any presumption. In order to set aside a deed on grounds of undue influence, evidence must show that the will and free agency of the grantor were destroyed and the deed actually reflects the will of the person exerting the influence. Costello v. Hall, 506 So.2d 293, 298 (Miss. 1987) (involves will rather than deed); Clark v. Magee, 234 Miss. 252, 259, 105 So.2d 753, 755 (1958).
The only evidence before this Court that the 1949 deed reflected the free agency and will of W.H., Sr. is the testimony of W.H., Jr. There is no evidence of any prior disclosure by W.H., Sr. that his intent was to deed the property to his sons. There is evidence showing that the deed reflects the will of W.H., Jr. but not the will of W.H., Sr., to wit: the letter from W.H., Jr. asking his parents to think about his proposition as he could not stand the thought of anyone else owning the place and the fact that W.H., Jr. actually typed the deed and obtained the signatures of his siblings. The 1949 deed clearly excludes the grantor's widow and daughters from inheriting any part of his primary asset. W.H., Sr.'s free will was destroyed and the 1949 deed actually represents the will of W.H., Jr., with results that are clearly unjust. This unjust end colors the influence exerted and allows us to label it undue. The chancellor was *106 correct when he found actual undue influence and we will not disturb his findings.

II.

DO ROSA L. GREENLEE AND W.H. GREENLEE, JR. HAVE THE PROTECTION OF MISSISSIPPI CODE ANNOTATED (1972), SECTION 89-5-13, SINCE THE 1949 DEED HAS BEEN OF RECORD FOR TWENTY YEARS?
Section 89-5-13, Mississippi Code Annotated (1972), reads as follows:
Whenever a deed has been of record twenty (20) years or more in the land records of the county in which the said land is located, the same shall be presumed to have been upon lawful authority; and the acknowledgment shall be good without regard to the form of the certificate of acknowledgment.
This statute is a curative statute for deeds with defective acknowledgments, but otherwise has no bearing on a deed's validity. Goodwin v. McMurphy, 435 So.2d 639, 643 (Miss. 1983). The 1949 deed was recorded in December, 1949, and has been of record more than twenty years, but there is no defective acknowledgment alleged. Rather, the 1949 deed is entirely without any acknowledgment. The statute does not cure the 1949 deed's total lack of acknowledgment; therefore, the Greenlees can claim no protection via § 89-5-13.

III.

DID THE COURT ERR IN FINDING THAT JEWELL GREENLEE MITCHELL DID NOT SIGN AND DELIVER THE 1953 DEED?

A.

DID THE COURT ERR BY ACCEPTING THE VERSION OF JEWELL GREENLEE MITCHELL AS TO THE SIGNATURE ON THE 1953 DEED NOT BEING HER SIGNATURE?

B.

DID THE COURT ERR IN NOT ACCEPTING THE EVIDENCE PRESENTED BY THE HANDWRITING EXPERT?
For the chancellor to decide that Jewell Greenlee Mitchell did not sign and deliver the 1953 deed, he must have accepted her testimony over that of the handwriting expert. This required that the chancellor make a judgment on the credibility of the witnesses, which is solely within his authority. Mullins v. Ratcliff, 515 So.2d 1183, 1189 (Miss. 1987). As in Culbreath v. Johnson, 427 So.2d 705 (Miss. 1983), the determination of this issue
turns inexorably on the creditability of the witnesses. With respect to questions of law, it may be that nine Justices of this Court with adequate time for study and deliberation and with the invaluable opportunity to consult with, between and among themselves, are in a position to do a better job than the Chancellor. On questions of fact, however, we could have 100 Justices and several years to study this case and still not do as good a job as the Chancellor, the man on the scene. The fact determination, by its very nature, must be made by the man on the scene, for he `has an infinitely superior vantage point when compared with that of this Court, which has only a cold record to read'. Culbreath v. Johnson, supra, 427 So.2d at 708.
Cotton v. McConnell, 435 So.2d 683, 687 (Miss. 1983).
Whether a deed has been forged is a question of fact. Blakeney v. Blakeney, 244 So.2d 3, 4 (Miss. 1971). Forgery must be proven by clear and convincing evidence. Culbreath, 427 So.2d at 707. We must examine the entire record and accept all evidence which supports the chancellor's findings. Id. at 707. If supported by substantial evidence, those findings must be affirmed here. Culbreath, 427 So.2d at 708.
The chancellor's finding of forgery was based on a combination of the testimony of the expert witness, who believed the signature to be genuine, Jewell Mitchell's testimony that she did not sign the deed and never signed her name with only one *107 "l", evidence that W.H., Jr.'s wife Rosa had previously spelled Jewell's name with only one "l", that all of Jewell Mitchell's checks and another warranty deed she admitted signing spelled her name with two "l"s, and the fact that no one testified that they saw Jewell Mitchell sign the deed. Jewell also paid the taxes on the property after her mother's death until 1985, which is not an act consistent with conveying her interest in the property. The only evidence that Jewell Mitchell signed the deed is the testimony of the handwriting expert. As in Culbreath, the chancellor was in a far better position than are we to determine whether the expert knew what he was talking about and whether his opinion was credible and to determine the credibility of Jewell's testimony. The chancellor's finding of forgery is supported by clear and convincing evidence and therefore must be affirmed.
If Jewell did not sign the deed she certainly did not deliver it. Delivery of a deed is essential to the deed's validity. Odom v. Forbes, 500 So.2d 997, 1001 (Miss. 1987). When a deed is found in the possession of the grantee, a presumption of delivery arises. Odom, 500 So.2d at 1001. The same presumption arises when a deed has been properly acknowledged before an authorized officer. Id. The 1953 deed has the benefit of both presumptions.
These presumptions are rebuttable. Odom, 500 So.2d at 1001. There is a conflict in the testimony as to whether or not Jewell delivered the deed. Jewell says she did not. W.H., Jr. says she did. As in Odom, there is an abundance of evidence here that tends to show that Jewell acted "totally at odds with any actual delivery of the deed." Id. at 1001.
The chancellor was not manifestly wrong nor clearly erroneous in finding that the deed was not signed or delivered by Jewell and we will not disturb his conclusion.

IV.

DID THE CHANCELLOR ERR IN ALLOWING CERTAIN TESTIMONY AND EVIDENCE TO BE ADMITTED INTO THE RECORD OVER OBJECTIONS?
The Defendants fail to cite any authority in support of this assignment of error and that precludes us from considering this claim on appeal. R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1023 (Miss. 1990).

V.

WAS THE CHANCELLOR IN ERROR IN HIS INTERPRETATION OF THE 1949 AND 1953 DEEDS AS TO ANY OWNERSHIP CONVEYED BY LAURA ELIZABETH GREENLEE?
The chancellor found both the 1949 and 1953 deeds invalid and he did not attempt to interpret either of them in regard to the ownership conveyed by Laura Elizabeth Greenlee. From his decree it is safe to presume the chancellor found that no ownership was conveyed by Laura Elizabeth Greenlee via the invalid deeds.
The chancellor found that the 1949 deed was invalid and should be set aside as a product of undue influence. Even had the deed been valid, Laura Greenlee owned no interest in the property in 1949 so she could convey none. The only consequence of Laura Greenlee's signature appearing on the 1949 deed would have been to validate W.H., Sr.'s conveyance of homestead property. Hendry v. Hendry, 300 So.2d 147, 148 (Miss. 1974).
The chancellor found that the 1953 deed was invalid because Jewell Mitchell's name was forged and because there was no delivery of the deed by Jewell. A forged deed is absolutely void and ineffectual to pass title. Morgan v. Morgan, 431 So.2d 1119, 1120 (Miss. 1983). Additionally, there was no delivery of the deed by Laura Greenlee. See Newsom v. Newsom, 226 Miss. 303, 83 So.2d 802 (1955). Laura Elizabeth Greenlee, therefore, did not convey any ownership with the 1953 deed.
There is substantial evidence to support the presumed findings of the chancellor and this Court will let them stand.

*108 VI.

DID THE CHANCELLOR ERR WHEN HE FOUND THAT W.H. GREENLEE, JR. AND ROSA L. GREENLEE WERE NOT ENTITLED TO ANY RECOVERY AGAINST THE PLAINTIFFS AS REQUESTED?
Once again the Greenlees' failure to cite any authority in support of this assignment of error precludes us from considering this claim on appeal. R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1023 (Miss. 1990).

VII.

IN CONSIDERING ALL THE DEEDS, DID THE CHANCELLOR COMMIT ERROR IN HIS FINDING AS TO ACTUAL OWNERSHIP OF THE SUBJECT PROPERTY?
The deeds to be considered are the 1949 deed, the 1953 deed, and the 1985 quitclaim deed from Max, Lucille, and Frank Greenlee to W.H., Jr.. The 1949 and 1953 deeds are invalid and served to convey no title. The 1985 quitclaim deed is valid, but only served to convey whatever interest Max, Lucille, and Frank owned at the time of the deed.

A.

DID THE CHANCELLOR ERR IN FINDING THAT W.H. GREENLEE, JR. AND/OR ROSA L. GREENLEE OWNED ONLY ONE-HALF INTEREST IN THE SUBJECT PROPERTY WITH ONE-FOURTH INTEREST BEING IN JEWELL GREENLEE MITCHELL, ONE-EIGHTH INTEREST IN CHRISTINE MILLER EDWARDS AND ONE-EIGHTH INTEREST IN WENDELL H. MILLER?
As the 1949 deed is invalid, W.H., Sr. died intestate, owning the property in fee simple. His heirs at law were W.H., Jr., Frank, Jewell, Cora, and Laura Greenlee, each of whom would have inherited a one-fifth (1/5) interest in the property. The 1953 deed, also invalid, need not be considered as it conveyed no interest.
In 1967, Frank Greenlee died intestate, leaving his one-fifth (1/5) interest to his heirs at law, Max, Frank, and Lucille. Laura Greenlee died intestate in January, 1974, leaving her one-fifth (1/5) interest to her heirs-at-law, W.H., Jr., Jewell, Cora, and Frank's heirs (Max, Frank, and Lucille), who take the portion Frank would have taken had he survived Laura. Cora Miller died intestate, leaving her one-fourth (1/4) portion of the subject land to Christine and Wendell (Billy), her heirs at law.
After the descents described above, W.H., Jr. and Jewell each owned a one-fourth (1/4) interest, Max, Frank, and Lucille each owned a one-twelfth (1/12) interest, and Christine and Billy each owned a one-eighth (1/8) interest. Then Max, Frank, and Lucille executed a valid quitclaim deed in favor of W.H., Jr., conveying their combined one-fourth (1/4) interest in the land. Thereafter W.H., Jr. owned a one-half (1/2) interest, Jewell owned a one-fourth (1/4) interest, and Christine and Billy each owned a one-eighth (1/8) interest. The chancellor was correct in his findings as to actual ownership of the property and those finding will not be disturbed by this Court.

VIII.

DID THE CHANCELLOR ERR IN FAILING TO GRANT UNTO WEYERHAEUSER COMPANY JUDGMENT AGAINST W.H. GREENLEE, JR. AND ROSA L. GREENLEE FOR ATTORNEY FEES, COURT COSTS AND OTHER COSTS OF PROSECUTING THE DEFENSE OF THIS ACTION WHICH CAME ABOUT AFTER WEYERHAEUSER HAD ACQUIRED THE TIMBER FROM APPELLANTS GREENLEE BY WARRANTY TIMBER DEED?
All court costs were in fact charged to the Greenlees by the trial court but no award of attorney fees was made. When there is no contractual provision or statutory authority providing for attorney fees, they may not be awarded as damages unless punitive damages are also proper. Central Bank of Mississippi v. Butler, 517 So.2d 507, 512 (Miss. 1987). In this case *109 there is a statutory provision for attorney fees.
That Weyerhaeuser acquired the timber warranty deed from Rosa Greenlee is undisputed. W.H., Jr. admitted that he, too, was liable by virtue of the deed which conveyed the timber, the granting clause of which reads as follows:
... do hereby convey and warrant unto Weyerhaeuser Company (a Washington Corporation) all merchantable pine timber and all merchantable hardwood timber twelve inches in diameter outside bark at the point of severance... .
The effect of the word "warrant" in a conveyance, with no restrictive words, embraces all five covenants known to common law, i.e., seisin, power to sell, freedom from incumbrance, quiet enjoyment and warranty of title. Mississippi Code Annotated § 89-1-33 (1972).
In Howard v. Clanton, 481 So.2d 272 (Miss. 1985), this Court interpreted § 89-1-33 (1972) to provide that a purchaser under a warranty deed could recover reasonable attorney fees and other expenses of adjudicating title, not to exceed the price he paid for the land, when the seller breached covenants embraced by the warranty deed and the purchaser was not divested of the land while adjudicating title. Although Howard involved a warranty deed for land while the case at bar involves a timber warranty deed, the same reasoning applies.
It is uncontested that the Greenlees conveyed the timber to Weyerhaeuser Co. by warranty deed; therefore, they were brought within the confines of § 89-1-33 (1972). Howard, 481 So.2d at 275. As the Greenlees were not sole owners of the land bearing the timber they sold by warranty deed, they breached the covenants of seisin and of power to sell. Howard, 481 So.2d at 276. If not divested of title to the timber, Weyerhaeuser Co. would be entitled to attorney fees. Id. Only one-half of the timber deeded to Weyerhaeuser Co. belonged to the Greenlees to begin with, but Weyerhaeuser has been ordered to pay half the amount it paid for the timber to the Mitchell/Millers, for their share of the timber harvested. Nowhere in the opinion or decree does the chancellor say Weyerhaeuser Co. is divested of title to the timber.
Pursuant to Howard, Weyerhaeuser is entitled to collect from the Greenlees reasonable attorney fees and other court costs, not to exceed the price paid for the timber, which was forty-two thousand seven hundred fifty-two dollars ($42,752.00).
Court costs were properly charged to the Greenlees by the chancellor. "Other costs of prosecuting the defense of this action" are not addressed by Weyerhaeuser in its brief and therefore will be disregarded on appeal. The record before us contains insufficient evidence for this Court to determine a reasonable attorneys fee; therefore, this issue must be remanded to the Chancery Court. Although the amount to be awarded is discretionary with the trial judge it must be supported by credible evidence. Young v. Huron Smith Oil Company, Inc., 564 So.2d 36, 40 (Miss. 1990).

IX.

DID THE CHANCELLOR COMMIT REVERSIBLE ERROR WHEN HE HELD THAT THE 1949 WARRANTY DEED WAS NOT VALID?
We have already addressed this issue and answered it in the negative.

X.

DID THE CHANCELLOR ERR IN FINDING THAT THE STATUTE OF LIMITATIONS HAD NOT RUN AGAINST THE PLAINTIFFS?
The Greenlees affirmatively pled the statute of limitations set forth in Miss. Code Ann. § 15-1-7 (1972), as well as §§ 15-1-9 and 15-1-11 (1972). The chancellor found that the 1949 deed gave neither actual nor constructive notice to the Plaintiffs; therefore, the statute of limitations did not begin to run until the timber was harvested in 1985 and 1986, as this did provide them with notice.

*110 A.

DID THE CHANCELLOR ERR IN HIS INTERPRETATION OF MISSISSIPPI CODE ANNOTATED (1972), SECTIONS 15-1-7, 15-1-9, AND 15-1-11?
Mississippi Code Annotated § 15-1-7 (1972), in pertinent part, states
[a] person may not make an entry or commence an action to recover land except within ten years next after the time at which the right to make the entry or to bring the action shall have first accrued to some person through whom he claims, or, if the right shall not have accrued to any person through whom he claims, then except within ten years next after the time at which the right to make the entry or bring the action shall have first accrued to the person making or bringing the same... .
Miss. Code Ann. § 15-1-7 (1972).
Generally, statutes of limitation begin to run as soon as a cause of action exists. Aultman v. Kelly, 236 Miss. 1, 5, 109 So.2d 344, 346 (1959). However, this section has been construed to require possession by the defendants to start the statute running. Bowen v. Bianchi, 359 So.2d 758, 760 (Miss. 1978); Trigg v. Trigg, 233 Miss. 84, 99, 101 So.2d 507, 514 (1958). Actual notice to the plaintiffs (of the deeds) will start the statute running also. Dent v. Calhoun, 326 So.2d 320, 321 (Miss. 1976). The statute will run when reasonable prudence would reveal the existence of a cause of action. King v. Childress, 232 Miss. 766, 772, 100 So.2d 578, 580 (1958).
If this statute of limitations began to run as soon as a cause of action existed it would have expired in 1959 as to the 1949 deed and in 1963 as to the 1953 deed. However, the evidence shows that Defendants Greenlees/Weyerhaeuser did not take possession of the land after the 1949 or 1953 deeds and indeed, showed no evidence of ownership until the timber deed to Weyerhaeuser was executed on September 25, 1985. We have no evidence of possession to start the statute running. The Mitchell/Millers claim to have had no actual knowledge of either deed until 1985, when the timber deal was executed. As there was no evidence presented to show actual notice, the statute does not bar this action under this approach.
The 1977 letter from Max Greenlee to Jewell Mitchell with copies to the Millers mentioned an attempted deed in 1949. This should have put the Mitchell/Millers on notice and caused them to investigate. Reasonable prudence would have revealed the existence of a cause of action at this point; therefore, the statute would have run against the Mitchell/Millers from 1977, expiring in 1987. The suit was initiated, however, in 1986. Under this approach the Mitchell/Millers are not barred from bringing this action.
Section 15-1-9 (1972) first limits the time for claiming land in equity to the time period allowed by § 15-1-7, which we have already determined did not bar the Mitchell/Millers from bringing this action. Miss. Code Ann. § 15-1-9 (1972). The statute goes on to state an exception for cases of concealed frauds:
[h]owever, in every case of a concealed fraud, the right of any person to bring suit in equity for the recovery of land, of which he or any person through whom he claims may have been deprived by such fraud, shall be deemed to have first accrued at and not before the time at which the fraud shall, or, with reasonable diligence might, have been first known or discovered.
Miss. Code Ann. § 15-1-9 (1972).
The concealed fraud in this case was the fact that W.H., Jr. held the 1953 deed without recording it until 1985, all the while representing to his family that the land was owned by all of W.H., Sr.'s heirs. The chancery court found by clear and convincing evidence that W.H., Jr. was guilty of fraud and that the elements necessary to constitute fraud pursuant to Stringfellow v. Stringfellow, 451 So.2d 219 (Miss. 1984), were met. These elements are a representation, its falsity, its materiality, the speaker's knowledge of falsity, his intent that it should be acted on in the manner reasonably contemplated, the hearer's ignorance of its falsity, his reliance on its truth, his *111 right to rely thereon, and his consequent and proximate injury. Id. at 221. W.H., Jr. falsely represented that all heirs of W.H., Sr. owned the land, which was a material representation. W.H., Jr. knew that his representation was false and he intended that his family would trust him and take no action regarding the land. The hearers were ignorant of the falsity of W.H., Jr.'s representations and rightfully relied upon his statements. Consequently, they were injured when W.H., Jr. sold timber to Weyerhaeuser Co.
Not only was this fraud not discovered until 1985, even with reasonable diligence it could not have been discovered until 1985, when W.H., Jr. recorded the 1953 deed and contracted for the sale and harvest of timber on the subject land. It follows that the Mitchell/Millers are not barred from bringing this action under § 15-1-9 because their right of action did not accrue until 1985.
Section 15-1-11 provides that one with a right of action for recovery of land because of specific defects in an instrument has ten (10) years after the date on which such instrument was actually recorded in the chancery clerk's office. Miss. Code Ann. § 15-1-11 (1972). In this instance the right of the Mitchell/Millers to bring this action was not based upon a defect in an instrument. Rather, it was W.H., Jr.'s fraud that gave them a right of action for the recovery of land. It follows that this statute of limitations is inapplicable to the case at bar.
The Mitchell/Millers were not barred from initiating this action by any of the above statutes.

B.

DID THE COURT ERR BY FAILING TO APPLY THE DOCTRINE OF LACHES?
A delay short of the statutory period of limitations does not bar recovery. Bolden v. Gatewood, 250 Miss. 93, 119, 164 So.2d 721, 732 (1964). The doctrine of laches is simply inapplicable where a claim has not yet been barred by the applicable statute of limitations. West End Corp. v. Royals, 450 So.2d 420, 425 (Miss. 1984).

ISSUES ON CROSS APPEAL

XI.

DID THE CHANCELLOR APPLY THE WRONG MEASURE OF DAMAGES FOR TIMBER HARVESTED FROM THE COMMONLY OWNED PROPERTY?
"Reduced to its essence, ... [this issue deals with] the value of converted timber." Bay Springs Forest Products, Inc. v. Wade, 435 So.2d 690, 694 (Miss. 1983). Conversion requires the intent to exercise dominion or control over goods inconsistent with the true owner's rights and is a result of conduct intended to affect property. Masonite Corp. v. Williamson, 404 So.2d 565, 567 (Miss. 1981). In Masonite, the appellant was found to have converted timber when she contracted for the cutting and received payments for timber on her land as well as on land belonging to others. Id. at 567-68. The Greenlees likewise converted the timber belonging to the Mitchell/Millers when they gave a timber warranty deed to Weyerhaeuser. The measure of damages for conversion is the value of the property at the time and place of its conversion. Masonite, 404 So.2d at 568, citing Phillips Distributors, Inc. v. Texaco, Inc., 190 So.2d 840 (Miss. 1966). Interest is also awarded from the date of the conversion. Phillips, 190 So.2d at 842.
The purchaser of converted timber (Weyerhaeuser) acquires no title and remains liable to the true owner (Mitchell/Millers) for the value of the timber. Bay Springs, 435 So.2d at 694. Where an innocent party purchases converted timber, the appropriate measure of damages is the delivered value. Id. at 696; Masonite, 404 So.2d at 568-69. The delivered value is computed by adding the stumpage price and logging costs of the converted timber. Bay Springs, 435 So.2d at 695.
Although Mississippi Code Annotated § 95-5-10 (Supp. 1991) sets out an exclusive remedy for cutting trees without consent *112 of the owner, it applies only to causes of action accruing on or after July 1, 1989, which is after the accrual of this cause of action.
The chancellor found that Weyerhaeuser acted in good faith and was not liable for statutory damages, awarding one-half (1/2) the purchase price of the timber, twenty-one thousand three hundred seventy-six dollars ($21,376.00), to the Mitchell/Millers to be paid jointly and severally by the Greenlees and Weyerhaeuser Company. However, the chancellor failed to reveal what measure of damages was applied.
The proper amount of damages chargeable to the Greenlees for conversion is the value of the property at the time and place of conversion plus interest from the date of conversion. The only evidence in the record which places a value on the property at the time and place of conversion is the amount paid by Weyerhaeuser for the timber, or twenty-one thousand three hundred seventy-six dollars ($21,376.00) for the converted portion. Although this figure includes logging costs and stumpage price, it represents the actual value to the owner in this instance.
Interest must be calculated on this amount from the date of conversion pursuant to Miss. Code Ann. § 75-17-7 (Supp. 1988), which was in effect on the date judgment was rendered in the chancery court. The statute provided an interest rate of eight per centum (8%) per annum for judgments or decrees without a contract evidencing the interest rate.
The proper amount of damages chargeable to Weyerhaeuser for the innocent purchase of converted timber is the delivered value, computed by adding the stumpage price and logging costs of the converted timber. Weyerhaeuser's bid price, forty-two thousand seven hundred fifty-two dollars ($42,752.00), reflected reasonable estimates of stumpage value and logging costs, according to testimony of Weyerhaeuser's operations manager. It follows that the appropriate amount of damages for which Weyerhaeuser is responsible is twenty-one thousand three hundred seventy-six dollars ($21,376.00).
We remand to the chancery court on this issue for a determination of damages not inconsistent with our findings.

XII.

SHOULD THE STATUTORY PENALTY APPLY NOT ONLY TO THE AMOUNT OF THE JUDGMENT BUT ALSO TO THE VALUE OF THE INTEREST IN THE PROPERTY RECOVERED THROUGH THIS ACTION?
There are three requisites for imposition of statutory damages pursuant to § 11-3-23. (1) The decree or judgment appealed from must have been final. (2) The decree or judgment must have been affirmed unconditionally. (3) The only matter complained of must have been the decree or some particular property or claim on it. Johnson v. Black, 480 So.2d 519, 520 (Miss. 1985). The statute also limits assessment of damages to cases "in which the judgment or decree appealed from provides for recovery in one of the five categories ..." set out in the statute itself. Wallace v. Jones, 360 So.2d 932, 933 (Miss. 1978). Here the decree appealed from is not unconditionally affirmed; therefore, the statutory penalty is not applicable to either the amount of the judgment or the value of the interest in the property recovered through this action.
ON DIRECT APPEAL: AFFIRMED IN PART; REMANDED IN PART TO THE CHANCERY COURT OF WEBSTER COUNTY FOR A DETERMINATION OF ATTORNEY FEES. ON CROSS-APPEAL: REVERSED AND REMANDED IN PART FOR A PROPER DETERMINATION OF DAMAGES.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, PITTMAN, BANKS and McRAE, JJ., concur.
DAN M. LEE, P.J., concurs in results only.