McMILLAN, et al. *v.* GIBSON.

No. 39372 December 6, 1954 76 So. 2d 239

*Roy N. Lee,* Forest, for appellant.

*McFarland & McFarland,* Bay Springs, for appellee.

GILLESPIE, J.

W. J. Wyatt owned 360 acres of land on which he and his wife lived. Wyatt was about 67 years old in 1940; his wife was 66. Prior to January 29, 1940, Wyatt had two deeds prepared, one in which the appellant, Mrs. McMillan, was grantee to 320 acres of his land, and one in which the appellee, Mrs. Gibson, was grantee to 40 acres. Mrs. McMillan and Mrs. Gibson were the married daughters of Wyatt and his wife, being the only children; both daughters had their own homes and families. Both of the deeds retained a life estate to Wyatt and his wife

and reserved the right to sell the timber during the lifetime of the grantors. By prior arrangement made by Wyatt, Mrs. McMillan's husband took Wyatt and his wife to a justice of the peace on January 29, 1940, where the deeds were signed and acknowledged. Wyatt then took both deeds to the Wyatt home where he handed the deeds to Mrs. McMillan and stated, ''Here are the deeds.'' Wyatt said nothing to indicate that he did not intend thereby to make delivery of Mrs. McMillan's deed. Mrs. McMillan presently handed the deeds back to Wyatt for the purpose of having them recorded; later Wyatt personally took the deeds to the chancery clerk where both deeds were recorded, Wyatt paying the recording fees. The clerk, after recording the deeds, sent them to Wyatt who kept them until his death. Wyatt and his wife died intestate in 1953, leaving appellant and appellee as their sole heirs at law.

Although not important to our decision, we here note that there were two matters that doubtless motivated Wyatt in making the deeds. One was the fact that he had rendered some assistance to Mrs. Gibson and her husband in acquiring a home; the other was that Wyatt and Mrs. Gibson's husband had disagreed on some political matters that resulted in some degree of estrangement between the Wyatts and the Gibsons.

■■■ We hold that the act of the grantor, Wyatt, in handing the deed to Mrs. McMillan without any conditions attached, the subsequent recording of the deed, and Wyatt's failure to challenge the validity of the deed until his death thirteen years later, constituted sufficient proof of delivery. Whether either one of these acts, standing alone, would constitute delivery we need not here decide. ■■■ Delivery is largely a matter of intention of the grantor. Hall v. Barnett, et al, 71 Miss. 37, 14 So. 732; Frederic et al v. Merchants and Marine Bank, 200 Miss. 755, 28 So. 2d 843. ■■■ Intention of the grantor is manifested by his words, acts and the cir-

cumstances surrounding the transaction. 26 C. J. S. 233, 234.

The recording of the deed raises a presumption of delivery. 26 C. J. S. 598. But this is a rebuttable presumption which disappears when it is shown that the deed was never delivered. Graham v. Graham, 213 Miss. 449, 57 So. 2d 175; Martin, et al v. Adams, et ux, 216 Miss. 270, 62 So. 2d 328.

Lynch v. Lynch, 121 Miss. 752, 83 So. 807, relied upon by appellee, is not in point. In that case the only act proven which tended to show a delivery was the recording of the deed; the deed never passed from control of the grantor; and the grantor testified he never intended to deliver the deed. We there held that the presumption of delivery arising from the recordation of the deed yielded to the proof that it was never delivered.

The only fact in this case that would tend to overcome the proof of manual delivery and rebut the presumption of delivery arising from the recordation of the deed is the fact that Mrs. McMillan handed the deed back to Wyatt, who, after having it recorded, kept the deed until his death. Where a deed which has been duly signed and acknowledged is subsequently found in possession of the grantor, a presumption arises that it was never delivered. 26 C. J. S. 593. But the courts generally recognize an exception to this rule, as where the grantor has reserved an interest in the property. 26 C. J. S. 594. Moreover, Wyatt's deed being a voluntary settlement, and the rights of creditors or subsequent purchasers not being involved, the mere fact of the grantor retaining possession of the instrument does not render it invalid for want of delivery, if he intended that it should be delivered. Wall, et al v. Wall, Exec., 30 Miss. 91.

After Wyatt's death, and before his wife died, the wife said to her daughters that Wyatt had intended to change the deeds, but death overtook him before he could do so. This testimony was admitted without ob-

jection. If such was Wyatt's intention, it is no evidence of non-delivery. The grantor in the deed was then without power to change the deeds in any way. It is not known what he intended to change, nor is it material on the question of delivery. Wilbourn v. Wilbourn, 204 Miss. 206, 37 So. 2d 256.

The chancellor was in error in his conclusions of law on the question of delivery of the deed.

■■■ The appellee filed a cross appeal which raises the question whether the deed to appellant was testamentary in character and invalid as a deed of conveyance. The deed was in the usual words and form of a deed in fee simple but contained the following paragraph: "It is hereby agreed and understood that the grantors herein reserve the rights, use, control and benefits from the above described lands during our natural lifetimes. Deed thereto to take affect at our deaths."

The question here involved has been the subject of much litigation and many cases are reported from our jurisdiction. The cases turn upon a great variety of words contained in the instruments, but they are in agreement that if the instrument appears on its face to have no effect until the death of the grantor, then it is testamentary in character and not valid as a deed, even though it be in the form of a deed. Mims, et al v. Williams, et al, 192 Miss. 866, 7 So. 2d 822, and cases cited therein. We have examined the numerous cases cited by the parties and find the case of Watts, et al v. Watts, 198 Miss. 246, 22 So. 2d 625, to be closest in point. The provisions there involved were: "The grantor herein specifically reserves unto herself a life estate in and to the above described property, the title to same to be vested in fee simple in the said Booster Watts at the death of said grantor herein." In the Watts case, it was the life estate, the enjoyment of which was postponed until death — not the vesting of title to the property. In the case here under consideration, it is plain that it was the life estate, or "the rights, use, control and bene-

fits from the above described lands," the enjoyment of which was postponed until grantors' death — not the vesting of title to the property.

The words of the instrument here involved reserved a life estate. Then followed the sentence, "Deed thereto to take effect at our deaths." The word "thereto" is used as a word of reference. The antecedent provision to which "thereto" refers is "the rights, use, control and benefits from the above described lands." Substituting the antecedent provision for the reference word "thereto," the last sentence of the quoted paragraph of the instrument would read: "Deed to the rights, use, control and benefits from the above described lands to take effect at our deaths." It is unmistakably clear that it was the life estate, the enjoyment of which was postponed until death of grantors. The paragraph in question did not deal with the title to the lands.

 The chancellor correctly held that the instrument was a deed.

Reversed on direct appeal and judgment here for appellant; affirmed on cross appeal.

*Roberds, P. J.,* and *Kyle, Arrington,* and *Ethridge, JJ.,* concur.