# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00944-SCT

*THE ESTATE OF JOHNNIE ELOISE HODGES
DYKES, DECEASED: GINGER DYKES WILLIAMS,
EXECUTRIX*

*v.*

*THE ESTATE OF MICHAEL A. WILLIAMS,
DECEASED: KATHRYN F. TONGUIS, EXECUTRIX*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/13/2002 |
| TRIAL JUDGE: | HON. W. HOLLIS MCGEHEE, II |
| COURT FROM WHICH APPEALED: | AMITE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOAN ELIZABETH LUND |
| ATTORNEY FOR APPELLEE: | GENE HORNE |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 12/04/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE McRAE, P.J., EASLEY AND CARLSON, JJ.**

**McRAE, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The Estate of Johnnie Eloise Hodges Dykes filed an action in the Chancery Court of Amite County to set aside a deed that Dykes had been executed to her grandson, Michael A. Williams. A trial was held before the chancellor, who refused to set aside the deed and ruled in favor of the defendant, Kathryn F. Tonguis, former wife of the now deceased Michael A. Williams. Dykes's estate appeals the decision of the chancellor and argues that the chancellor erred because (1) the deed was never delivered; (2) the deed was not properly executed, notarized, and acknowledged; (3) no consideration was paid by the grantee;

(4) no power of attorney existed to properly convey the land; and (5) an agent acting under power of attorney cannot make a gift when the instrument conferring power of attorney does not authorize such. We affirm.

## FACTS

¶2. In February of 1982, Johnnie E. Hodges Dykes ("Johnnie") and her husband, Milford L. Dykes, executed a deed to their grandson, Michael A. Williams ("Michael"), conveying to him the family's 80-acre hunting camp near Liberty, Mississippi, while reserving a life estate in the same property for themselves. The deed was filed in the land records of Amite County, Mississippi, that June. Michael, who was 18 at the time of the conveyance, paid nothing in exchange and never even knew of the conveyance. However, the deed did state that the grantor received "ten dollars ($10.00), cash in hand paid, and other good and valuable consideration, the receipt of which is hereby acknowledged."

¶3. In October of 1993, Michael and his mother, Ginger Dykes Williams ("Ginger"), executed a quitclaim deed conveying the 80 acres back to Johnnie (Milford had previously died). The deed was filed for record that November and indicated that Michael and Ginger maintained the same address in Pensacola, Florida, while Johnnie maintained residence in Mississippi.

¶4. In June of 1995, Ginger executed a quitclaim deed conveying the 80 acres back to Michael.[1] While the deed bore the name Johnnie Hodges Dykes as the grantor, it was signed "Johnnie Hodges Dykes by- Ginger D. Williams, Power of Attorney."

¶5. The notary public in this instance, Michelle Musselwhite ("Michelle"), typed the following at the end of the acknowledgment: "Ginger D. Williams appeared for Johnnie E. Hodges Dykes by Power of

_____

[1] This was done in an attempt to prevent the land from being taken to reimburse Medicaid expenses upon Johnnie's death.

Attorney." The deed was executed in Escambia County, Florida, on June 1, 1995, and was filed in the Amite County land records on June 5, 1995. Ginger continued to pay the taxes on the land until 1999.

¶6. Sometime after the June 1, 1995, execution of the deed, Johnnie passed away. On March 18, 1999, Michael married Kathryn (now Kathryn Tonguis, hereinafter "Kathryn"). Roughly four months later, Michael died. Shortly thereafter, Kathryn took over ownership and began paying taxes on the land.

¶7. On February 17, 2000, Ginger[2], as executrix of Johnnie's estate ("the Estate"), filed a complaint against the Estate of Michael A. Williams in the Chancery Court of Amite County to cancel the 1995 deed. However, all responsive pleadings were filed by Kathryn. By agreement, Kathryn was later substituted as party defendant and waived any and all procedural errors.

¶8. At trial, the Estate sought to have the deed set aside as invalid on the grounds that (1) there was no consideration; (2) the deed was never delivered; (3) Dykes did not have the mental capacity to make a gift at the time of the deed's execution; (4) no valid power of attorney existed at the time of the deed's execution for Ginger to have properly conveyed the land; and (5) the alleged power of attorney was not recorded. On May 13, 2002, the chancellor found for Kathryn on all issues. The Estate subsequently filed its notice of appeal on June 11, 2002, after which, the case was assigned to this Court. While the Estate renews the argument that there was no valid power of attorney to effectuate the deed and the argument that the deed, itself, was invalid, we affirm the decision of the trial court that the land properly belongs to Kathryn.

## STANDARD OF REVIEW

---

[2] Ginger is now Johnnie's only surviving heir and would inherit the property if the Estate's claim were successful.

¶9. This Court will not disturb the factual findings of a chancellor unless such findings are manifestly wrong or clearly erroneous. *In re Conservatorship of Bardwell*, 849 So.2d 1240, 1245 (Miss. 2003). If there is substantial evidence to support the chancellor's findings of fact, those findings must be affirmed. *Id*. However, this Court reviews questions of law de novo. *Morgan v. West*, 812 So.2d 987, 990 (Miss. 2002).

## DISCUSSION

### I. *Whether a purported deed is void ab initio when it is not delivered by the Grantor to the Grantee during the lifetime of the Grantor?*

¶10. For a deed to be valid in Mississippi, the grantor must deliver it to the grantee. *Martin v. Adams*, 216 Miss. 270, 62 So.2d 328, 329 (1953). To show that the delivery, itself, is valid, there must be (1) "a complete and unequivocal delivery of the deed" and (2) "an actual intent by the grantor to deliver the deed," shown by the words and acts of the grantor and the context of the transaction. *Benton v. Harkins*, 800 So.2d 1186, 1187 (Miss. Ct. App. 2001). However, the recording of a deed creates the rebuttable presumption that it was delivered.[3] *In re Estate of Hardy*, 805 So.2d 515, 518 (Miss. 2002); *McMillan v. Gibson*, 222 Miss. 408, 76 So.2d 239, 240 (1954).

¶11. In *Hardy*, this Court noted that where grantors retain control and possession of a deed until death, without any indication of any intent to deliver the deed, the deed is void for non-delivery. 805 So.2d at 518. There, a woman was found not to have delivered deeds to her children where the children not only denied ever accepting the deeds, but the deeds were found in the woman's purse at the time of her death. *Id*.

---

[3] This presumption, of course, disappears once it is shown that there was no delivery. *McMillan v. Gibson*, 222 Miss. 408, 76 So.2d 239, 240 (1954).

¶12. A somewhat similar situation occurred in *Grubbs v. Everett*, 236 Miss. 698, 111 So.2d 923, 924 (1959). There, this Court affirmed the ruling of the chancellor, that there was no delivery where the purported deeds in question were found in the trunk of the deceased after his death and there was no evidence of his intention to have the deeds delivered until after his death. *Id*.

¶13. In the case at bar, the record is clear that the deed in question was executed in Pensacola, Florida, on June 1, 1995, and then recorded in Liberty, Mississippi on June 5, 1995. Therefore, the rebuttable presumption has been raised that there was a valid delivery of the deed to the son.

¶14. The Estate argues that Ginger's testimony successfully defeated this presumption. Ginger stated "I did not record that deed. I did not. And if I need to take a lie detector test to swear - I don't know how it got recorded. I did not record it." The Estate claims that, since Kathryn failed to present any witness to rebut that testimony, Ginger's testimony was uncontroverted and should have carried the day.

¶15. However, the chancellor found that Ginger's testimony, itself, provided enough contradiction and, thus, Kathryn's assistance was unnecessary. Because it was Ginger's word versus the evidence, the chancellor was required to make a determination as to her credibility, which is well within his authority. *See, e.g., Greenlee v. Mitchell*, 607 So.2d 97, 106 (Miss. 1992).

¶16. The chancellor took note of the inconsistencies between Ginger's testimony and claims at trial compared to the actions that the evidence clearly showed that she took. It was also apparent to the chancellor that the Estate's witnesses were not free of bias, and he found it notable that Ginger never challenged the validity of the deed during the four years between the execution and recording of the deed and her son's death.

¶17. Again, because the deed was recorded, the presumption of delivery was raised, and the burden was placed on the Estate to rebut. However, despite the Estate's contention that Ginger brought forth

5

uncontroverted evidence that there was no delivery, it is clear that the chancellor considered such evidence and Ginger's credibility and found them both wanting. Considering the deference given to a chancellor's finding of fact, we affirm the chancellor's finding that the deed was delivered.

> **II.** ***Whether a purported deed is patently void when it is not properly executed, notarized, and acknowledged according to Mississippi Code Sections 87-3-3, 89-3-1, and 89-3-7(f)?***

¶18. An acknowledgment is simply a formal statement, made by the person executing a deed to an official who is authorized to take the acknowledgment, that the execution of the deed was of that person's own free will and accord. *See **White v. Delta Foundation**, **Inc**.*, 481 So.2d 329, 332 (Miss. 1985). Not only must deeds be properly acknowledged before they may be recorded, but if the acknowledgment is for a conveyance of land by an attorney in execution of letters of attorney, the acknowledgment must reflect the representative capacity in which the signatory is acting. Miss. Code Ann. §§ 89-3-1, 87-3-3 (1999). The Legislature has even provided a form for acknowledgments dealing with real property. Miss. Code Ann. § 89-3-7(f) (Supp. 2003). However, Mississippi gives a liberal interpretation to acknowledgments whereby an acknowledgment will not be held "fatal" for an omission that can be filled in from the body of the deed itself. See *White*, 481 So.2d at 333-34.

¶19. In *White*, this Court found an acknowledgment in an instrument defective because it was ambiguous and unclear. *Id*. at 334. There, the instrument was so ambiguous that it was not clear which of two possible corporations was executing the instrument. *Id*. Therefore, the acknowledgment was defective and the instrument void. *Id*.

¶20. In the case at hand, the Estate claims that the acknowledgment was defective not only for failing to strictly follow the form provided by statute, but also because Ginger did not write the acknowledgment on her own accord, but at the instruction of the notary. However, the chancellor found that Ginger signed

6

the acknowledgment of her own free will. Additionally, the Estate fails to cite any authority that an acknowledgment is fatally defective for not precisely adhering to form.

¶21. Notwithstanding the failure to strictly follow form, the acknowledgment contains all the necessary information and, therefore, should not be held fatal pursuant to *White*. Furthermore, it is clear from the deed that Ginger was acting on behalf of Johnnie, the grantor, and, thus, there was no ambiguity. In addition, we are guided by the chancellor's determination that Ginger signed the acknowledgment of her own free will and not at the command of Michelle, the notary. Because the chancellor was not manifestly wrong, we affirm the chancellor's finding as to this issue.[4]

> **III.     Whether a purported deed is void ab initio when no consideration is paid to the Grantor by the Grantee?**

¶22. Offering a deed as a gift is a "perfectly respectable mode of conveyance." *Mullins v. Ratcliff*, 515 So.2d 1183, 1190 (Miss. 1987); *Holmes v. O'Bryant*, 741 So.2d 366, 370 (Miss. Ct. App. 1999). Furthermore, one may execute a deed for any reason seen fit, such as "love, affection, gratitude, partiality, prejudice, or even a whim or caprice." *Herrington v. Herrington*, 232 Miss. 244, 98 So.2d 646, 649 (1957); *Holmes*, 741 So.2d at 370.

¶23. As to this issue, the only legal theory provided by the Estate is an uncited sentence that merely states that a deed is a form of a contract, followed by a citation to the rule of contract requirements. We find this issue without merit and uphold the ruling of the chancellor.

---

[4] The Estate makes a short claim that the deed is void because it refers to both the Grandma and Ginger and thus creates a clear and manifest repugnance between two clauses. Therefore, according to this argument, the first clause would prevail, making Grandma Dykes the maker. See *Martin v. Adams*, 62 So.2d 328, 329. However, *Martin* continues to say that such rule cannot be invoked when, upon reading the entire document, there is but one interpretation. *Id*. Upon reading the entire document, the chancellor failed to find these clauses repugnant. The chancellor did not err in deciding this issue.

### IV. Whether a purported deed is void ab initio when signed by a purported agent, where no power of attorney exists?

¶24. "[W]here a conveyance by an attorney is in execution of letters of attorney, so acknowledged or proved and recorded, it shall pass the interest of the principal though not formally executed in his name." Miss. Code Ann. § 87-3-3 (1999). Before one operating through letters of attorney may execute and deliver a valid deed "prior in right to the interests of (a) subsequent purchasers for value and without notice or (b) subsequent judgment lien creditors, the written power of attorney must be acknowledged and recorded in conformity with the requirements generally applicable to instruments of conveyance of interests in land." *Kountouris v. Varvaris*, 476 So.2d 599, 603 (Miss. 1985).

¶25. However "[i]t is one of the oldest maxims of the law that no man shall, in a court of justice, take an advantage which has his own wrong as a foundation for that advantage." *Collins v. Collins*, 625 So.2d 786, 789 (Miss. 1993) (quoting *Patterson v. Koerner*, 220 Miss. 590, 71 So.2d 464, 466 (1954)). To employ this maxim, the conduct need not be of such a nature as to be criminal or justify any legal proceedings, but there must simply be a "wilful act concerning the cause of action which can be said to transgress equitable standards of conduct." *Id*. (quoting *Thigpen v. Kennedy*, 238 So.2d 744, 746-47 (Miss. 1970)).

¶26. In *Kountouris*, a man granted his son-in-law powers of attorney. *Id*. at 601. The son-in-law consequently deeded a parcel of the father's land back in Greece to his wife, the man's daughter. *Id*. Upon the father's death, it was noted that the father had actually devised the property to his son. *Id*. One of the major grounds upon which this Court nullified the transaction was that the son-in-law had failed to record the letters of attorney as required by § 87-3-3. *Id*. at 603-04.

¶27.    In *Collins*, the plaintiff deeded property to the defendant in order to avoid having the state seize the property in collection of fines that had been levied against him. 625 So.2d at 789. Subsequently, this Court affirmed the chancellor's finding that the plaintiff's challenge to the conveyance to the land should be denied due to the doctrine of unclean hands. *Id*. at 789-90.

¶28.    The Estate argues that *Kountouris* mirrors the case at hand and, thus, the conveyance to Michael should be void because Ginger failed to record the letters of attorney. On the other hand, Kathryn contends that, as the chancellor held, to allow Ginger to discredit actions that she took flies in the face of the equity power with which the chancellor is vested.

¶29.    It is plainly apparent that, since the letters of attorney were never recorded, that § 87–3-3 was not satisfied and that Ginger did not have the ability to "pass the interest of the principal." While *Kountouris* appears to limit § 87-3-3 to a situation not found here, the language of the statute is simple and clearly stated. Therefore, Kathryn is not saved from Ginger's failure to record simply because this transaction does not involve a third party.

¶30.    However, as the chancellor pointed out, to allow Ginger to benefit from her behavior "flies in the face" of equity. While *Collins* is not on point, the general maxim stated therein appears applicable, nonetheless. Not only is Ginger (as executrix of the Estate) trying to discredit her own actions, the entire conveyance was performed to ensure that the government did not take the land as part of any Medicaid reimbursement that might be required of the Estate.

¶31.    While the chancellor erred in his analysis of § 87-3-3, he was correct as to his analysis of the impact of equitable principles on this case, and we affirm the ruling of the chancellor as to this issue.

> V.      *Whether an agent, acting under a purported power of attorney, can make a gift of valuable real property of the principal, without any*

9

*consideration whatsoever paid to the principal, where a "gift" is not expressly authorized in the instrument conferring power?*

¶32.    An agent is to act in the best interest of and not to the detriment of his principal. ***In re Estate of Hardy***, 805 So.2d at 519. *See also* ***McKinney v. King***, 498 So.2d 387, 388 (Miss. 1986).  In addition, general powers of attorney that authorize agents to sell and convey property imply a sale for the benefit of the principal. ***In re Estate of Hardy***, 805 So.2d at 519.

¶33.    In ***Hardy***, an agent with power of attorney who had deeded most of a group of sisters' interest in certain land to their brother was found to have acted outside the scope of her powers as those actions in no way helped the sisters, but only harmed them by taking their land and giving it to another. ***Id***. at 519-20.

¶34.    In ***McKinney***, a wife had been granted power of attorney by her husband, who was dying of cancer.  498 So.2d at 388.  The husband had willed that the property go to the daughter but that the wife be entitled to use and possession so long as she remained a widow and resided there. ***Id***.  Subsequently, the wife executed a deed granting her and her husband a tenancy in common with right of survivorship. ***Id***. When pressed by the chancellor, she was unable to provide any argument as to how such a transaction was in the best interest of the husband. ***Id***.  Therefore, the chancellor canceled the deed. ***Id***.

¶35.    As the chancellor noted in the case at hand, there had been an ongoing series of conveyances involving this land.  Both grandparents had earlier conveyed a right of survivorship to Michael earlier. Subsequently, he and his mother conveyed his property rights back to Johnnie.  The chancellor fairly concluded that Ginger was acting within her authority.  There had long been manifested an intent for Michael to have the property when his grandparents were gone.

¶36. Ensuring that the land would go to Michael untouched by Medicaid protected the wishes and best interests of Johnnie. Therefore, it cannot be said that the chancellor committed manifest error by finding that Ginger was not acting against the best interests of Johnnie nor outside her scope of authority. We affirm the ruling of the chancellor.

## CONCLUSION

¶37. The Estate has failed to show manifest error in any of the factual findings made by the chancellor. Furthermore, while the chancellor may have incorrectly analyzed the law in regards to recording letters of attorney, principles of equity still apply and prevent any relief to the Estate. Because the Estate has failed to invalidate either Ginger's power of attorney or the deed itself, we find that the property properly belongs to Kathryn Tonguis and affirm the judgment of the chancellor.

¶38. **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. COBB, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

11