IRVING, J.,
for the Court.
¶ 1. Charlie J. Everett filed a petition in the Simpson County Chancery Court urging the court to set aside certain deeds executed by Judene Everett, his deceased father. Charlie alleged, among other *152 things, that prior to Judene’s death, Ju-dene failed to properly deliver the deeds to the appellant, Michael A. Everett. A hearing was held on the matter, and the chancellor entered a judgment setting aside the deeds on the basis that delivery had not been completed prior to Judene’s death. Aggrieved by the chancellor’s ruling, Michael argues in this appeal that:(l) the chancellor erred in finding that the warranty deed and mineral deed had not been delivered, (2) the record contains clear and uncontradicted evidence that the deeds were in fact delivered, and (3) the appellee failed to overcome the presumption that the deeds had been delivered.
¶ 2. We find no reversible error; therefore, we affirm the chancellor’s ruling.
FACTS
¶ 3. Judene Everett died on April 22, 1998, leaving his two sons Michael and Charlie as heirs. Prior to his death, Ju-dene executed a warranty deed and a mineral deed in which he conveyed all of his real property and mineral interests to Michael. Judene kept the documents in a safe deposit box at a local bank in an envelope marked, “To Attorney.” The safe deposit box was jointly leased by Michael and Judene; therefore, Judene had free access to the contents of the box. However, Michael testified that because of Judene’s poor health, Judene was unable to go to the safe deposit box during the latter months of Judene’s life.
¶ 4. Shortly before Judene’s death, Ju-dene instructed Michael to retrieve the documents from the safe deposit box. Michael testified that at that time, Judene informed him that the deeds belonged to Michael and gave him specific instructions to take the documents to Scott Buffington, a local attorney, after his (Judene’s) death. Michael further testified that he later returned the deeds to the safe deposit box as directed by his father.[1]
¶ 5. Upon Judene’s death, Michael took the documents to Buffington to have them recorded, but Buffington, however, failed to record the deeds. Michael then took the deeds to another attorney who promptly filed them on May 27, 1998. Additional facts will be related during our discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 6. “[We] will not disturb the factual findings of a chancellor unless such findings are manifestly wrong or clearly erroneous.” Estate of Dykes v. Estate of Williams, 864 So.2d 926, 930(¶9) (Miss.2003) (citing In re Conservatorship of Bardwell, 849 So.2d 1240, 1245(¶ 16) (Miss.2003)). “If there is substantial evidence to support the chancellor’s findings of fact, those findings must be affirmed.” Id. at (¶ 16). “However, this court reviews questions of law de novo.” Estate of Dykes, 864 So.2d at 930(¶ 9) (citing Morgan v. West, 812 So.2d 987, 990(¶8) (Miss.2002)).

Delivery of Deed

¶ 7. Although Michael assigns several issues for our resolution, the crux of his argument is that the chancellor erred in concluding that Judene failed to deliver the deeds prior to Judene’s death. Michael contends that the evidence is clear that Judene delivered the deeds to him, that he accepted the deeds prior to Ju-dene’s death, and that he recorded the deeds thereafter.
*153 ¶ 8. “For a deed to be valid in Mississippi, the grantor must deliver it to the grantee.” Estate of Dykes, 864 So.2d at 930(¶ 10) (citing Martin v. Adams, 216 Miss. 270, 277, 62 So.2d 328, 329 (1953)). “To show that the delivery, itself, is valid, there must be (1) ‘a complete and unequivocal delivery of the deed and (2) an actual intent by the grantor to deliver the deed,’ shown by the words and acts of the grant- or and the context of the transaction.” Estate of Dykes, 864 So.2d at 930(¶ 9) (quoting Benton v. Harkins, 800 So.2d 1186, 1187(¶ 9) (Miss.Ct.App.2001)).
¶ 9. We find that the chancellor did not err in finding that Judene had not delivered the deeds to Michael. A review of the record reveals that Judene maintained complete control of the deeds up until his death. Although before his death Judene was physically unable to go to the safe deposit box due to his failing health, because he had access to the contents of the safe deposit box, the deeds were still within his possession at the time of his death. In fact, Michael confirmed as much, which can be discerned from the following cross-examination of him:
Q: All right. Now, the reason you put them back as I think you told me earlier — let’s see if you agree with me. The reason you took them back to the lock box and put them in the lock box, was because Mr. Judene told you to do that, didn’t he?
A: Correct.
Q: All right. And from the time they went back to the lock box it was his instruction to you that they stay there and on his death they go to Scott Buffington, the lawyer?
A: When I had time to return them. Yes, sir. He didn’t say, “Take them back today right now.”
Q: Okay. But it’s a fair statement that your instructions were to take them back whether it was that day or the next day or two when it was convenient?
A: Correct.
Q: And, in fact, as you told me earlier I think, correct me, if I’m wrong. In your daddy’s mind at the time he died they were still in the box in an envelope to be taken to Scott Buff-ington, weren’t they?
A: Correct.
Q: All right. Now. Notwithstanding anything that you say that your dad told you on the day you took them home and talked to you about it, I think we can agree on this. Up until the day he died and on some of these occasions that he was in the bank like Ms. Lloyd talked about, he could have gone in that box and torn that deed up if he wanted to, couldn’t he?
A: Certainly.
Q: He had the full right to do that even in your mind, didn’t he?
A: Correct.
Q: Because it was his property and he could do what he wanted with it, couldn’t he?
A: Correct.
As demonstrated by the above testimony, Judene possessed the authority to alter the deeds at any time prior to his death. Therefore, Michael’s argument that Ju-dene delivered the deeds to him lacks merit.
¶ 10. Finally, Michael argues that a presumption that the deeds had been delivered arose when he recorded the deeds after Judene’s death, and thus Charlie had an obligation to overcome this presumption. “The recording of [a] deed creates [a] rebuttable presumption that it was *154 delivered.” Estate of Dykes, 864 So.2d at 930(¶ 10) (citing In re Estate of Hardy, 805 So.2d 515, 518(¶ 6) (Miss.2002)). “This presumption, of course, disappears once it is shown that there was no delivery.” Estate of Dykes, 864 So.2d at 930 (footnote 3) (citing McMillan v. Gibson, 222 Miss. 408, 413, 76 So.2d 239, 240 (1954)).
¶ 11. Although Michael’s recording of the deeds created a presumption that the deeds had been validly delivered, this presumption disappeared once the chancellor found that Judene had not in fact delivered the deeds to Michael. Considering the deference given to the chancellor, we find that this issue is without merit.
¶ 12. THE JUDGMENT OF THE CHANCERY COURT OF SIMPSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ„ CONCUR.

. Michael testified that he kept the deeds at home in his possession for two weeks before returning them to the safe deposit box.