IRVING, J.,
for the Court.
¶ 1. Sarah Virginia Lawrence Morgan and Mary Melinda Lawrence Andress (Sarah and Mary) filed a petition in the Rankin County Chancery Court urging the court to set aside a warranty deed executed by Nettie Inez Baker Lawrence (Nettie), their deceased grandmother. The pleading, which was styled “Petition to Remove Cloud and Confirm Title,” alleged that the warranty deed which conveyed the property at issue to their father, James Timothy Lawrence (Timothy), created a cloud upon their title to the property. Sarah and Mary also alleged that they were unaware of the deed’s existence and challenged its authenticity. In response, Timothy filed an answer and counterclaim *101 requesting that the chancellor enjoin Sarah and Mary from interfering with his possession and use of the property.
¶ 2. A hearing was held on the matter, and the chancellor found that Sarah and Mary had failed to present sufficient evidence that would warrant setting aside the deed. The chancellor also denied Timothy’s counterclaim for an injunction.
¶ 3. Aggrieved by the chancellor’s ruling, Sarah and Mary argue on appeal (1) that the chancellor erred in finding that they failed to comply with the deraignment of title provision set forth in Mississippi Code Annotated section 11-17-35, (2) that due to Timothy’s fiduciary capacity as administrator of Nettie’s estate, he is estopped from claiming any title to the property other than that of a life estate as specified in Nettie’s will, and (3) that they stood in the same position as bonafide purchasers without notice and that the judgment closing Nettie’s estate was entitled to priority over Timothy’s unrecorded deed.
¶ 4. Finding no reversible error, we affirm the chancellor’s ruling.
FACTS
¶ 5. On November 25, 1975, Nettie and her husband, W.A. Lawrence, executed a warranty deed conveying two hundred and forty-one acres of land to their son, Timothy, and reserving a life estate in themselves. Nettie and W.A. also executed a mineral deed conveying mineral interests on the property to Timothy and their other son, Rudy. Timothy testified that his parents gave him the deeds shortly after the conveyance.[1] Timothy stated that he did not record the deeds at that particular time because his parents’ life estate would permit them to live on the property for the rest of their lives; therefore, he did not “have any reason to record the deeds as long as they lived there.”
¶ 6. In January 1987, Nettie executed a holographic will devising to Sarah and Mary the same property which she had conveyed to Timothy in 1975. The will stated that Timothy was to retain complete control of the property “as long as he lives.”
¶ 7. Upon Nettie’s death in April 1993, Timothy took the deeds along with the holographic will to an attorney to be probated. When the attorney failed to probate the will, Timothy obtained another attorney. Although the will was sent to Timothy’s new attorney, for reasons unexplained in the record, the deeds were never forwarded.[2] The will was probated, and Nettie’s estate was closed in March 1996. Timothy testified that he did not see the deeds again until approximately a month before he had them recorded in September 2001.[3] Additional facts will be related during our discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

Standard, of Review

¶ 8. “[We] will not disturb the factual findings of a chancellor unless such findings are manifestly wrong or clearly erroneous.” Estate of Dykes v. Estate of Williams, 864 So.2d 926, 930 ¶ 9 (Miss.2003) (citing In re Conservatorship of Bardwell, 849 So.2d 1240, 1245 ¶ 16 (Miss. *102 2003)). “If there is substantial evidence to support the chancellor’s findings of fact, those findings must be affirmed.” Id. “However, [an appellate court] reviews questions of law de novo.” Estate of Dykes, 864 So.2d at 930 ¶ 9 (citing Morgan v. West, 812 So.2d 987, 990 ¶8 (Miss.2002)).
¶ 9. Although Sarah and Mary have assigned several issues for our review, the resolution of this case is determined by whether or not Nettie made a valid delivery of the warranty deed to Timothy. This issue is critical in the determination of whether Nettie possessed the requisite authority to pass the property under her will.
¶ 10. The law is clear that in order “[f]or a deed to be valid in Mississippi, the grantor must deliver it to the grantee.” Estate of Dykes, 864 So.2d at 930 ¶ 10 (citing Martin v. Adams, 216 Miss. 270, 62 So.2d 328, 329 (1953)). “To show that the delivery, itself, is valid, there must be (1) ‘a complete and unequivocal delivery of the deed and (2) an actual intent by the grantor to deliver the deed,’ shown by the words and acts of the grantor and the context of the transaction.” Estate of Dykes, 864 So.2d at 930 ¶ 10 (quoting Benton v. Harkins, 800 So.2d 1186, 1187 ¶ 9 (Miss.Ct.App.2001)). “[T]he recording of [a] deed [however] creates [a] rebuttable presumption that it was delivered.” Estate of Dykes, 864 So.2d at 930 ¶ 10 (citing In re Estate of Hardy, 805 So.2d 515, 518 (Miss.2002)). “This presumption, of course, disappears once it is shown that there was no delivery.” Estate of Dykes, 864 So.2d at 930 (citing McMillan v. Gibson, 222 Miss. 408, 413, 76 So.2d 239, 240 (1954)).
¶ 11. During the hearing, Sarah and Mary presented evidence that Timothy failed to disclose to anyone that Nettie had previously deeded the property to him. Sarah and Mary also presented evidence that Timothy had taken numerous actions regarding the property that were consistent with that of a life tenant and not of a fee simple owner. After thoroughly considering the evidence, the chancellor found the deed to be a legitimate document and further found that it had been validly delivered. The chancellor concluded that Sarah and Mary had failed to present sufficient evidence that would warrant setting the deed aside.[4]
¶ 12. We agree with the chancellor’s finding that Sarah and Mary failed to meet their burden of rebutting the presumption that there was a valid delivery of the deed. The record reflects that Nettie and her husband conveyed the property to Timothy in 1975, and also gave the deeds to him at that time. When the deeds were delivered to Timothy, title to the property immediately vested in him, and resulted in a complete transfer that was beyond Nettie’s power to alter. Testimony given by Nettie’s neighbor, Dr. Henry Irby, supports this contention:
Q: (By Mr. Downey:) So, Dr. Irby, you then asked Ms. Lawrence one day if you could buy some of her property.
A: I asked her if she was interested in selling any of the acreage on the south side down there next to where it joins our place.
Q: And what did she say to you?
*103 A: She told me that, no, that, as a matter of fact, that I(sic) was her and her husband’s wishes that it belongs to Tim, and that it was not hers to sell.
¶ 13. As the above testimony reveals, although Nettie possessed a life interest in the property, she was no longer the owner of the fee, and therefore had no authority to pass it under a will. Accordingly, we affirm the chancellor’s ruling.
¶ 14. We find it unnecessary to address Sarah and Mary’s remaining issues. However, we will briefly address Sarah and Mary’s argument that they stand in the same position as bona fide purchasers without notice and that the order closing Nettie’s estate is a judgment entitled to priority over Timothy’s unrecorded deed. We find that this argument is without merit for two reasons. First, there is nothing in the record to suggest that Sarah and Mary are creditors, and second, there is nothing in the record to indicate that Sarah and Mary paid consideration or value for the land that Nettie attempted to give them under her will.
¶ 15. Finally, we note that Sarah and Mary failed to pray for equitable or general relief in their pleadings which they filed in the trial court. They did not assert that Timothy should be judicially or equitably estopped for his sworn submission in the estate proceedings that “he and his minor daughters [Sarah and Mary] are beneficiaries under said Will and Petitioner [Timothy] has been named their fiduciary in said Will regarding certain property devised to them in said Will.” See, e.g., Estate of Richardson v. Cornes, 903 So.2d 51 (Miss.2005) holding that an administratrix had unclean hands and was equitably and judicially estopped from pleading a fact which the court determined contradicted earlier factual pleadings. In any event, the chancellor stated that he had considered Timothy’s actions and inactions in the estate matter, as well as in other matters, and, despite finding that Timothy’s actions were consistent with the actions of a life tenant and not with the actions of a fee simple owner, apparently concluded that neither judicial nor equitable estoppel was appropriate.
¶ 16. As a reviewing court, we are constrained by the record before us, and the record leaves us no alternative but to embrace the findings of the trial court. That embrace also requires that we affirm the judgment presented.
¶ 17. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. BRIDGES, P.J., NOT PARTICIPATING.

.Timothy testified that his parents explained to him that his father was having medical problems and that they were getting older. He further testified that his parents informed him that as a result, they wanted him to take the deeds while they were still knowledgeable.

. Timothy testified that the deeds were later found in a file in his first attorney’s office.

. Timothy testified that his decision to record the deeds resulted from repeated disagreements with Sarah and Mary concerning the property’s use.

. The chancellor noted that he had considered the fact that Timothy failed to make a disclosure of his ownership of the property and had similarly failed to disclose his ownership status while serving as the administrator of Nettie’s estate. The chancellor also noted that he considered evidence that Timothy had taken numerous actions which were more consistent with a life tenant than a fee simple owner.